UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STEPHEN SAMAHA, as          :
Administrator for the Estate  :
of Rene Lavigne,            :
      Plaintiff,          :
                 :
       v.               :     No. 2:05-cv-315
                 :
SCOTT'S CONSTRUCTION, INC.,  :
      Defendant.          :
                 :

## OPINION AND ORDER

Stephen Samaha, the Administrator for the Estate of Rene Lavigne filed suit against Scott's Construction, Inc. ("SCI") on October 17, 2006. Samaha alleges that SCI is vicariously liable for the negligent training and supervision its employees provided Rene Lavigne on the day of his death. Before the Court are the Defendant's Motion to Dismiss and Motion for Judgment on the Pleadings (Doc. 33). For the reasons set forth below, the motions are GRANTED.

## I.  BACKGROUND

For the purposes of this motion, the Court accepts as true the allegations set forth in the Complaint. Rene Lavigne was fatally injured while working for Scott's Construction, Inc. ("SCI") on a construction project in Saxtons River, Vermont on October 20, 2004. The

construction project involved placing concrete "wing walls" at both sides of a large culvert.  The crew excavated large trenches and used trench boxes to facilitate the placement of the wing walls.  The trench boxes consisted of two large side walls, each twenty-four feet long and eight feet wide, and cross braces, or spreaders, which connected the two sides of the box.  Each spreader was ten feet long and weighed approximately 400 pounds.  Lavigne's accident occurred when the construction crew attempted to remove some of the spreaders while retaining the side walls.  The crew used two excavators to pull the spreaders away from the side wall.  Lavigne was in the trench when a spreader suddenly came loose and struck him in the head.  After several days in the hospital, Lavigne died.  SCI's workers' compensation carrier paid over $75,000 in medical bills related to Lavigne's accident.  (Answer to Am. Compl. ¶ 47.)  In addition, Lavigne's father received $5,500 pursuant to 21 V.S.A. § 632 as partial reimbursement for funeral expenses. Lavigne's only son and heir Jamie Lavigne did not receive any compensation.  He was not a dependent at the time of the accident and was therefore not entitled to any benefits under 21 V.S.A. § 632.

Stephen Samaha, the administrator of Rene Lavigne's estate, has filed suit for wrongful death against SCI.

Samaha alleges that SCI is vicariously liable for its employees' negligent supervision and training of Rene Lavigne.  SCI has filed a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  SCI argues that Samaha is barred from bringing suit because the Vermont Workers' Compensation Act ("the Act") prohibits injured employees and their next of kin from suing employers for negligence or wrongful death. *See* Vt. Stat. Ann. tit. 21, § 622.

Samaha contends that the Act violates Article 7 of the Vermont Constitution as it is applied to the estates of workers who die without dependents.  He has requested that the Court certify the question to the Vermont Supreme Court pursuant to Rule 14 of Vermont Appellate Procedure.

## II.  Certification to the Vermont Supreme Court

Samaha argues that the question of the constitutionality of the exclusivity provision is a question of state law which should be certified to the Vermont Supreme Court.  Rule 14 of Vermont Appellate Procedure allows for the certification of questions from federal court to the Vermont Supreme Court.  However, certification is only appropriate if there are no controlling precedents. Vt.

R.App. P. 14.   Since the rule's adoption, only four cases have been certified to the Vermont Supreme Court.  *See Preseault v. City of Burlington,* 908 A.2d 419 (Vt. 2006), *Traveler's Insurance Co. v. Carpenter*, 313 F.3d 97 (2d Cir. 2002), *Egri v. U.S.Airways* Inc., 873 A.2d 892 (Vt. 2002, *Mortgage Lenders Network, U.S.A. v.  Sensenich*, 873 A.2d 892, 896 (Vt. 2004).

In the present case, the Court does not write on a blank slate.  The Vermont Supreme Court has already laid out the standard of review for analyzing Article 7 questions. *Baker v. State of Vermont*, 744 A.2d 864, 878-79 (Vt. 1999). *Baker* provides this Court a clear framework from which to analyze the exclusive remedy provision under Article 7.  In addition, although the Vermont Supreme Court has not addressed this particular aspect of the exclusive remedy provision, it has ruled on the constitutionality of the provision in other contexts.  *See Sienkiewycz v. Dressell,* 561 A.2d 415 (Vt. 1989); *Lorraine v. Ryan*, 628 A.2d 543 (Vt. 1993).  These cases along with the *Baker* analysis provide the Court with the clear and controlling precedents necessary to decide this question.  Therefore, certification to the Vermont Supreme Court is unnecessary.

## III.  Motion to Dismiss Standard

4

In reviewing a Rule 12(b)(6) motion to dismiss, the
Court must accept the factual allegations set forth in the
complaint as true, and draw all reasonable inferences in
favor of the plaintiff.  *He v. Chertoff*, No. 2:07-cv-14,
2007 U.S. Dist. LEXIS 65236, at *5-7 (D. Vt. 2007); *see
Cleveland v. Caplow Enters.*, 448 F.3d 518, 521 (2d Cir.
2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100
(2d Cir. 2005). The appropriate inquiry is "not whether a
plaintiff will ultimately prevail, but whether the claimant
is entitled to offer evidence to support the claims."
*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks
omitted).

Federal Rule of Civil Procedure 12(c) allows a party to
move for judgment on the pleadings if the facts contained in
the pleadings do not state a cause of action upon which
relief can be granted.  In assessing a Rule 12(c) motion, a
court should apply the same standard it would apply to a
Rule 12(b)(6) motion.  *Burnette v. Carothers*, 192 F.3d 52,
56, (2d Cir. 1999).

## IV.  Discussion

Samaha argues that the exclusive remedy provision
contained in the Act violates Article 7 of the Vermont
Constitution.  In particular, Samaha argues that if a worker

dies without dependents, the Act denies his or her estate a benefit that is provided to the estates of workers' with dependents.  Under the Act, dependents are entitled to receive survivor benefits, but non-dependent next of kin receive nothing.  Vt. Stat. Ann. tit. 21, § 634. In addition, the Act states that workers' compensation is the exclusive remedy for employees and their families. *Id.* § 622.  It bars employees, their next of kin and their personal representatives from suing for injury or wrongful death.  *Id.*  Samaha asserts that this bar is unconstitutional as applied to this case.

### A.Standard of Review Under Article 7

*1. Article 7 and the Fourteenth Amendment*

Article 7 of the Vermont Constitution states:

> The government is or ought to be instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family or set of persons, who are a part only of that community; and that the community hath an indubitable, unalienable and indefeasible right, to reform or alter government, in such manner as shall be, by that community judged most conducive to the public weal.

Vt. Const. ch. I, art. 7.

The general purpose of Article 7 is to ensure that all members of the Vermont community receive equal access to the benefits and protections the law provides. *Baker v. State of*

*Vermont*, 744 A.2d 864, 876 (Vt.1999).  The Common Benefits Clause differs from the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution in a number of significant ways.  *Id.* at 870.  "The concept of equality at the core of the Common Benefits Clause was not the eradication of racial or class distinctions, but rather the elimination of artificial governmental preferments and advantages."  *Id.* at 877.  Article 7 contains three separate clauses of which the second containing the prohibition against special emoluments is the most important.  *Baker*, 744 A.2d at 892 (Dooley, J. concurring).  In his concurrence, Justice Dooley noted that a classification designed to promote the general welfare and reasonably related to the public interest is not an exclusive emolument.  *Baker*, 744 A.2d at 892 (Dooley, J., concurring) (citing *Town of Emerald Isle v. State*, 360 S.E.2d 756, 764 (N.C. 1987).

The Fourteenth Amendment was adopted by a Reconstruction-era Congress concerned with discrimination against disfavored individuals and groups.  *Baker*, 744 A.2d at 891 (Dooley, J., concurring).  The general purpose of the Equal Protection Clause is to protect against racial or other class-based discrimination.  The federal courts have developed an approach to analyzing equal protection

7

questions that involves different levels of scrutiny
depending on the nature of the right and the classification.
Rational basis review is the lowest level of scrutiny.
Under rational basis review, the courts will uphold
statutory classifications if they are "rationally related to
a legitimate state interest." *City of Cleburne v. Cleburne
Living Center, Inc.,* 437 U.S. 432, 440 (1985).  In cases
where a state has drawn a classification based on race,
alienage or national origin the courts will apply strict
scrutiny.  Under strict scrutiny, classifications will only
be upheld if they are "suitably tailored to a compelling
state interest." *Id.* at 440.  Strict scrutiny is also used
in cases where a constitutionally protected right is at
stake regardless of the nature of the classification.  *Id.*
at 440.  The courts have also adopted an intermediate level
of review for classifications based on gender or legitimacy.
Under "heightened scrutiny" a court will only uphold
classifications if they are "substantially related to a
sufficiently important governmental interest." *Id.* at 440-
41.

## 2.  *The Traditional Standard of Review Under Article 7*

Although the Common Benefits Clause and the Equal
Protection Clause differ, the Vermont Supreme Court has
often used equal protection principles developed by the

8

federal courts to analyze Article 7 questions. *Baker,* 744
A.2d at 870.  The Vermont Supreme Court has addressed the
constitutionality of the exclusivity provision of the
Vermont Workers' Compensation Act on two occasions.  In each
case, the court applied a rational basis standard.  In
*Sienkiewycz*, the plaintiff challenged a classification which
allowed corporate employees to sue their supervisors in
their capacity as co-workers but barred law-suits against
employers who were the sole proprietors of their business.
*Sienkiewycz,* 561 A.2d at 416.  The court upheld the
distinction between corporate and non-corporate employers
and ruled that there was no fundamental right to recover
beyond the amount provided by workers' compensation.  It
held that the test under Article 7 was "whether the law is
reasonably related to the promotion of a valid public
purpose."  *Id.* at 417.  The court ruled that the
classification furthered the State's legitimate interest in
providing an expeditious remedy through workers'
compensation.  *Id.* at 416-17.  The court was unwilling to
deviate from the legislative scheme and undermine the
workers' compensation system by re-introducing common law
recovery against working employers.  *Id.* at 417.

     In *Lorraine v. Ryan,* 628 A.2d 543 (Vt. 1993), the wife
of an injured worker challenged the exclusive remedy

provision.  She argued that the Act violated Article 7 because it barred her from suing a negligent third-party for loss of consortium while allowing her husband to recover for his injury.  She argued that the provision treated people who were similarly situated (spouses of injured workers') differently on the basis of whether the injured spouse had received workers' compensation.  *Id.* at 550.  Using a rational basis standard, the Vermont Supreme Court held the exclusive remedy provision as applied to loss of consortium law-suits against third-parties violated Article 7.  *Id.* at 551.  The court reasoned that third-party tortfeasors had nothing to do with the employer-employer relationship so that granting them immunity fostered no legitimate public purpose.  *Id.* at 552.

### 3. The Baker Analysis

The *Baker* decision changed the analysis used by Vermont courts for Article 7 questions.  In *Baker*, the Vermont Supreme Court expressly rejected the rational basis/strict scrutiny tests for Article 7 questions.[1]  *Baker*, 744 A.2d at

---

[1] In rejecting the equal protection principles developed by federal courts, the Vermont Supreme Court noted that earlier decisions purporting to rely on the rational-basis test had actually applied a more "stringent" standard.  *Id.* at 872.  Moreover, the Court noted that in some prior decisions, the Court had specifically required a heightened standard.  *Id.* at 871-72. (citing cases); *State v. Ludlow Supermarkets, Inc.,* 448 A.2d 791, 795 (Vt. 1982) (Article 7 only allows classifications if the state can establish an overriding

878.  Instead, the Vermont Supreme Court held that the principle of inclusion at the heart of the Common Benefits Clause called for a more uniform standard of review.  *Id.* at 878.  In order to pass constitutional muster, a "statutory exclusion from publicly-conferred benefits and protections must be premised on an appropriate and overriding public interest."  *Id.* at 873 (quoting *Ludlow*, 448 A.2d at 795).

The plaintiff in *Baker* had challenged Vermont marriage laws that denied same-sex couples the right to legally marry.  He argued that he was being denied a benefit under Article 7 that similarly situated heterosexual couples received.  *Id.* at 870.   The State of Vermont argued that the State's interest in promoting long-term commitment between couples who had children was furthered by denying same-sex couples the right to marry.  *Id.* at 881.  However, the Vermont Supreme Court found that the rights and benefits of marriage were so significant that any exclusion from them must "necessarily be grounded on public concerns of sufficient weight, cogency and authority that the justice of the deprivation cannot seriously be questioned."  *Id.* at

---

necessity);  *State v. Brunelle,* 534 A.2d 198, 201-02 (Vt. 1987) (Article 7 may require a more stringent reasonableness inquiry than was generally associated with rational basis review); *Hodgman v. Jard Co.,* 599 A.2d 1371, 1373 (Vt. 1991) (Article 7 may require the Court to examine more closely distinctions drawn by state government than would the Fourteenth Amendment.)

884.  The court held that the statutory exclusion did not
promote the government's stated interest.  *Id.* at 884.  It
ruled that under Article 7, same-sex couples are entitled to
receive the same protections and privileges that marriage
provides to opposite-sex couples.  *Id.* at 886.

In *Baker,* the Vermont Supreme Court adopted a three-
step analysis in applying the Common Benefits Clause.  The
reviewing court should (1) delineate the classification and
examine its statutory basis; (2) examine the government's
purpose in creating a classification that excludes a part of
the community; and (3) balance the State's interest with the
interests of the excluded class.  *Id.* at 878-79.  In
balancing these interests, the court considers the
significance of the benefits, whether the omission of a part
of the community promotes the government's stated goals and
whether the classification is over- or under-inclusive.  *Id.*
at 879.  The court must ultimately decide whether the
omission of a part of the community from the benefits of the
challenged law bears a "reasonable and just relation to the
governmental purpose."[2]  *Id.* at 879.

---

[2] The *Baker* decision describes the Article 7 analysis as
follows:  [W]e first "define the part of the community" that
is disadvantaged by the law.  We examine the statutory basis
that distinguishes those protected by the law from those
excluded…We look next to the government's purpose in drawing
a classification that includes some and excludes others…We
examine the nature of the classification to determine

## B. The *Baker* Analysis Applied

### 1.   *The Part of the Community Disadvantaged by the Law*

The first step in the *Baker* analysis is to define the part of the community that is disadvantaged by the law and the statutory basis for their exclusion.  *Baker,* 744 A.2d at 878.  Samaha asserts that the Act unfairly distinguishes between the estates of workers who die with dependents from those who die without dependents.  His argument is based on § 632 of the Act which provides survivor benefits only to dependents.  Vt. Stat.Ann. tit. 21, § 632.  Although a deceased worker's financially independent next of kin are not eligible to receive survivor benefits, they are barred from suing for wrongful death.  Vt. Stat. Ann. tit.21 § 622. Every estate is entitled to receive a $5,500 funeral benefit.  Additionally, family members who can show they were financially dependent on the deceased worker are eligible for survivor benefits.

---

whether it is reasonably necessary to accomplish the State's claimed objectives.  We must ultimately ascertain whether the omission of a part of the community…bears a reasonable and just relation to the governmental purpose…factors to be considered in this determination may include: (1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community…promotes the government's stated goals and (3) whether the classification is significantly over or under inclusive.  *Id.* at 878-9.

The Act defines "dependent" broadly to ensure that spouses, children, parents and grandparents who can show they were dependent on their deceased relative's income are provided for.  Although the Act produces differing outcomes for dependent and non-dependent family members, this is based on a legislative determination that the interests of the State and of employees are best served by limiting benefits to those family members who most rely on them.  The State is no more obliged to provide survivor benefits to non-dependent family members than to provide them to close friends or neighbors.  Samaha has thus failed to establish that the law disadvantages any segment of the population.

## 2.  *The State's Purpose in Drawing the Classification*

Assuming arguendo that Samaha was able to show that the estates of workers without dependents are disadvantaged, the next step in the *Baker* analysis is to examine the State's purpose in drawing the classification.  *Baker,* 744 A.2d at 878.

Workers' compensation laws in Vermont were enacted to ensure that medical care and monetary compensation were provided to injured workers and their families.  Before workers' compensation laws were enacted, employees who were injured in the workplace had to prove their employers were at fault in order to be compensated.  Employers had a number

of defenses such as contributory and fellow servant negligence that often resulted in verdicts in their favor. *Sienkiewycz* 561 A.2d at 416.  As a result, many workers received little or no compensation for their injuries, and the families of fatally injured workers were often left without remedy.

The Vermont Workers' Compensation Act attempts to strike a balance between the interests of employers and employees.  *Candido v. Polymers Inc.*, 687 A.2d 476, 478-9 (Vt. 1996).  The exclusive remedy provision in the Act is designed to create a quid pro quo between employers and employees.  Employees benefit because they receive compensation swiftly and without the burden of proving fault; employers benefit because their liability is "limited and determinate." *Morriseau v. Legac*, 181 A.2d 53, 57 (Vt. 1962).  The Act provides injured employees with medical benefits and compensation until they are able to return to work.  The Act also requires that in the case of fatal injuries, the employer shall provide a $5,500 funeral benefit to the personal representative or next of kin of the deceased worker.

A secondary purpose of the Act is to protect the dependents of fatally injured workers from becoming impoverished or a burden on governmental resources.

*Morriseau*, 151 A.2d 57 (holding that the Act places on business the burden of caring for injured employees, or when killed, their dependents).  The dependents of workers who die from work-related injuries are eligible to receive benefits as compensation for lost income.  Vt. Stat. Ann. tit. 21 §§ 632, 634.  Spouses and minor children are presumed to be dependents.  Adult children, parents, grandparents and siblings who can show they are wholly or partially incapable of self-support are also eligible to receive survivor benefits.  Vt. Stat. Ann. tit. 21, § 634.

In exchange for being provided immediate benefits without proof of fault, employees and their families are barred from suing their employers for negligence or wrongful death.  Section 622 states: "The rights and remedies granted by the provisions of this chapter shall exclude all other rights and remedies of the employee, personal representatives, dependents or next of kin at common law or otherwise on account of such injuries." *Id.* § 622.  The decision to provide benefits to employee's dependents represents a reasoned determination by the Vermont legislature.  In balancing the interests of employers, employees, and the public at large, the legislature has decided that provision must be made for dependents. Conversely, the legislature's decision not to provide

16

compensation for an employee's financially independent kin represents a determination that such payments would be more burdensome than beneficial.

### 3. Whether the Classification is Reasonably Related to the State's Purpose

The final step in the *Baker* analysis is to determine whether the omission of a part of the community from the law or benefit bears a "reasonable and just relation to the governmental purpose." *Baker*, 744 A.2d at 879. In analyzing an Article 7 question, the courts should look at the significance of the benefits, whether the omission of a part of the community promotes the government's stated goals and whether the classification is significantly over- or under-inclusive. *Id.* at 879.

### i. The Significance of the Denied Benefits

Rene Lavigne's estate and his son, Jamie Lavigne, are excluded from recovering survivor benefits under the workers' compensation system and from suing SCI for wrongful death. Samaha argues that this exclusion deprives Jamie Lavigne of a remedy for his father's death.

The right to sue for wrongful death of a family member, however, is not a fundamental right.[3] In *Quesnel v. Town of*

---

[3]   In *Baker*, the Court analyzed Vermont and federal decisions and ruled that the benefits and protections of legal marriage were extremely important and could not be denied to same-sex couples. *Id.* at 884. *See Loving v.*

*Middlebury*, 706 A.2d 436 (Vt. 1997), the parents of a man killed in an accident challenged Vermont's Wrongful Death Act ("WDA") because it barred them from suing the defendant for their son's death.  The WDA authorized the spouse and next of kin to sue for wrongful death.  Because the plaintiff's son had left a wife and child, his parents were not considered to be his next of kin and were barred from suing.  The parents argued they were denied equal protection and due process of law because they could not sue whereas the parents of an adult child who died without children could.  *Id* at 439.

The Vermont Supreme Court ruled that wrongful death actions are derived from statute not the common law.  *Id.* at 439.  It held that the legislature could reasonably limit liability to a preferred class of beneficiaries.  *Id.* at 439.  Because there was no statutory or common-law cause of action for the plaintiffs, the Vermont Supreme Court held that they were not denied rights under Article 4 of the Vermont Constitution.  *Id.* at 439.  Jamie Lavigne has no right to sue SCI for the wrongful death of his father.  Nor

_____

*Virginia*, 388 U.S. 1, 12, 18 (1967) ("the freedom to marry has long been recognized as one of the vital personal rights") and *Vermont Overseers of the Poor*, 1829 Vt. LEXIS 42, **19 (Vt. February, 1829) (marriage is one of the "natural rights of human nature").

has he a right to receive any remedy other than Workers'
Compensation. *Sienkiewycz,* 561 A.2d at 417. Although Jamie
Lavigne's loss is tragic, his interest in bringing a
wrongful death action does not outweigh the State's interest
in creating a comprehensive workers' compensation scheme.

*ii. Whether the Omission Promote's the State's Purpose*

Samaha also argues that the quid pro quo between
employers and employees that is central to workers'
compensation does not exist in his case. He argues that the
central purpose of workers' compensation is undermined in
cases where employers receive immunity but the employees'
estate and next of kin receive no benefit.

However, the quid pro quo that is at the heart of the
Act cannot be objectively evaluated on a case by case basis.
Under the Vermont Workers' Compensation Act, employees and
their dependents are given a broad range of benefits without
having to prove fault. Their recovery is limited, but they
are spared the hazards and delays of litigation. The Act's
purpose is to strike a balance between the interests of
employers and employees. It provides assurance to workers
that in the case of injury or death they and their
dependents will be provided for. It provides certainty to
employers by clearly identifying the benefits they are

responsible for providing and the beneficiaries who are entitled to receive them.

The Vermont Supreme Court has held that the exclusive remedy provision within the Act should be construed broadly and in such a way as to harmonize with the general purpose of the Act. *Kittell v. Vermont Weatherboard*, 417 A.2d 926, 927 (Vt. 1980). In interpreting the Act, the courts should ignore the general rule of law that statutes in derogation of the common law are to be strictly construed. 21 V.S.A. § 709. In construing the provisions of the Act, courts should weigh the consequences of their decisions. *Morriseau*, 181 A.2d at 58.

The consequences of court interference in the present case could be particularly counterproductive. For example, the requirement that the workers' compensation scheme compensate non-dependents could produce two undesirable results. First, the cost of workers' compensation insurance would likely rise significantly. Second, the amount of benefits provided to dependents might very well be reduced.

Alternatively, if the Court were to allow common-law recovery in cases where employees die without dependents, the entire workers' compensation system would be undermined. Dependents who are entitled to survivor benefits might demand the right to a tort remedy for wrongful death

20

instead.  If employers were in danger of being subjected to
lengthy legal battles, they might be unwilling to provide
death and survivor benefits without proof of fault.  A
return to the common-law recovery system would bring with it
many of the same problems that the Act was designed to
ameliorate.  Financially dependent relatives who were unable
to afford the cost of litigation or unable to prove fault at
trial would be left without a remedy.  The State's policy of
limiting survivor benefits and barring wrongful death
actions is reasonably related to the State's interest in
creating a strong and comprehensive workers' compensation
system.

### iii. Whether the Classification is Over- or Under-Inclusive

Samaha also argues that the exclusive remedy provision
is over-inclusive as applied to the next of kin of deceased
workers.  Section 624(a) permits claims by next of kin in
cases where a worker was killed by a third-party.  Vt. Stat.
Ann. tit. 21, § 624(a).  He argues that this distinction
treats similarly situated individuals differently.

The exclusivity provision is not over-inclusive as
applied to the facts of this case. Although Samaha has tried
to analogize this case to *Lorraine*, the facts are
distinguishable.  In *Lorraine*, the Vermont Supreme Court
held that it was arbitrary and irrational to apply the

exclusive remedy provision in cases where spouses sought to sue third-parties. *Lorraine*, *628 A.2d at 551.* The Court ruled that next of kin may bring claims against third-parties because the third-parties are outside the employer-employee relationship. *Id. at* 551. Immunizing third parties from negligence claims would serve no public purpose. *Id.* at 551. In this case, Mr. Lavigne's death occurred as part of the employer-employee relationship. Immunizing SCI serves a public purpose. It ensures that the workers' compensation system is not undermined by a series of exceptions allowing for common-law recovery against employers.

The Vermont Supreme Court has recognized that the exclusivity provision may pose a hardship in individual cases. However, it has been unwilling to disturb the legislature's decision that the benefits of quick and certain partial compensation outweigh those of delayed and contingent full compensation. *Kittell*, 417 A.2d at 927. Legislation that is uneven in its impact can still be constitutional if the underlying policy is compelling and the inequitable impact is a necessary consequence of implementing the policy. *State v. Ludlow Supermarkets*, 448 A.2d 791, 793 (Vt. 1982).

The purpose of the Common Benefits Clause is to ensure that the State is not showing favoritism to a particular part of the community.  *USGEN New England, Inc. v. Town of Rockingham*, 838 A.2d 927, 938 (Vt. 2003).  The workers' compensation system was designed to protect the interests of employers and employees, not to provide special benefits to a select group of Vermonters.  Moreover, classifications designed to promote the general welfare and reasonably related to the public interest do not constitute an exclusive emolument.  *Baker*, 744 A.2d at 892 (Dooley, J. concurring).  The classifications created by the act are designed to promote a strong workers' compensation system that protects the welfare of all Vermonters.  The denial of death benefits to non-dependents and the exclusivity provisions prohibiting them from suing employers are reasonably related to that purpose.  The exclusive remedy provision of the Vermont Workers' Compensation Act does not violate Article 7 of the Common Benefits Clause.

### C.   The Experience of Other States

In his pleadings, Samaha relied heavily on *Park v. Rockwell International Corp.,* 436 A.2d 1136 (N.H. 1981), in which the New Hampshire Supreme Court struck down the exclusivity provision as applied to the estates of workers who died without dependents.  It held that because there was

23

no quid pro quo between employers and employees without
dependents, the exclusivity provision had no rational
purpose. *Id.* at 1136.  However, the New Hampshire Supreme
Court has recently overturned *Park*.  *Alonzi v. Northeast
Generation Services Company*, No. 2007-039, 2008 N.H. LEXIS 4
(Jan. 15, 2008).  It ruled that *Park* had been wrongly
decided because it focused too narrowly on the quid pro quo
between a particular class of employees (those without
dependents) and their employers  rather than analyzing the
quid pro quo in the context of the entire workers'
compensation system.  *Id.* at 22.

Other states have also addressed the issue of whether
the exclusive remedy provisions of workers' compensation law
violate their respective state constitutions.  Every state
that has addressed the issue has held that it is
constitutional to provide survivor benefits to dependents
while denying the estates of deceased workers' the right to
sue for wrongful death.  *Taylor v. Southeast-Harrison
Western Corp.*, 694 P.2d 1160 (Alaska 1998) (collecting cases
from Nevada, Alabama, Idaho, Oregon and Washington); *see
also Nosser v. Natchez Jitney Jungle, Inc.*, 511 So.2d 141,
142 (Miss. 1987) (citing cases from, inter alia, Florida and
Lousiana); *Ryan v. Centennial Race Track Inc.*, 580 P.2d 794,
796-97 (Colo. 1978) (citing cases from, inter alia, Kansas;

*Sanchez  v. M.M. Sundt Constr.*, 760 P.2d 158, 161 (N.M. App. 1985); *Carpenter v.* Hawley, 281 S.E2d 783, 787 (N.C. App. 1981).  In discussing this issue, the courts have uniformly understood the quid pro quo between employers and employees as a general premise for the overall scheme, not as a categorical imperative to be applied to individual cases. *Taylor*, 694 P.2d at 1160 (holding that the appellant was mistaken in analyzing the exclusive remedy in isolation rather than as part of a comprehensive scheme).  In short, the universal accord among the sister states supports the conclusion the Court reaches today.

## V.  Conclusion

For the reasons stated above, Scott's Construction, Inc.'s Motion to Dismiss and Motion for Judgment on the Pleadings (Doc. 33) are GRANTED.

Dated at Burlington, Vermont this 22nd day of February, 2008.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge
United States District Court

25